OPINION of the Court, by
Judge Owsley.
Hainy obtained judgments in ejectment against the appellants, by virtue of the elder grant, which issued in his own name as assignee, upon a survey made in 1784, under an entry of the 16th of December 1783, in the name of Smith and Hainy. To injoin these judgments the appellants exhibited their bill in chancery, claiming the land under two entries in the name of Edward Payne and William Calk, prior in date to that of Smith and Hainy. They allege that after the surveys were made upon all of the entries, an agreement of compromise was entered into between Hainy and Edward Payne, whereby Hainy by his written obligation bound himself to convey to Payne the interference, and asked of the court a specific execution of that contract.
Hainy by his answer denied the validity of the appellants’claim, admitted the execution of the obligation to Payne for a conveyance of the interference, but alleged that the agreement was procured by the fraudulent misrepresentations of Payne, and insisted that it ought not to be specifically executed.
On a hearing the court below being of opinion the appellants were not entitled to relief, made a decree dismissing their bill with costs, and from that decree they have appealed to this court.
The following are the entries under which the appellants claim:
“ 1783, March 10th — Edward Payne and William Calk enter 3000 acres of land on three treasury warrants, beginning at the southwest comer of James French’s 9000 acre entry, and 2000 poles south from a white oak marked H.; at á certain lick, &c. being the beginning of Stephen French’s 2000 acre entry ; running thence E. 536 poles, thence S. 490 poles, thence W. 980, thence N. 490 poles, thence E. 440 poles to the beginning, including the head Waters of a large creek that runs into Licking creek above the upper salt spring, and the head waters of some of the N. E. branches of Lulbegrud, excepting prior claims,” &c.
“ 1783, March 10th — Edward Payne and William Calk enter 2235 acres, on, &c. beginning at the S, W. corner of Calk and Payne’s entry of 3000 acres on the ■waters of licking creek and Lulbegrud, running thence *404 W. 423 poles, thence N. 943 poles, thence E. 423 poles, thence S. 948 poles to the beginning.”
As these entries depend on tw@ others, one of which is in thename of James French, and the other in the name of Stephen French, it is proper we should notice them also. They are as follows :
“25th January lf83 — Stephen French enters 2000 acres of land on treasury warrants, on the waters of a creek of the Salt Spring fork of Licking Rat heads opposite to the eastwardly or northeastwai dly branch of Lulbegrud; beginning at a 7'¡kite oak marked H. stand, ing on the bank of a buffalo lick, and on the north side of the same lick, is immediately on the north side of the creek, and ⅝ branch empties into the creek on the north side of the same in the lower edge of the lick, five or six piiles (more or less) down the waters from Spencer Reed’s pre-emption of 400 acres, which he has assigned to William Calk ; extending thence S. 800 poles, E. 400 poles, N. 800 poles, and W. 400 poles to the begin, ning,” &c.
“ 25th January 1783 — James French, assignee, &c. enters 9000 acres, &c. on the waters of the Salt Spring fork of Sicking, beginning 88 poles due south from the white oak and lick, the beginning of Stephen French’s entry of 2000 acres on the waters of the Salt Spring fork, &c. extending thence south 1200 poles, east 1200 poles,north 1200 poles, awl west 1200 poles to thebe-ginning.”
If the appellants are entitled to relief, it must be under the agreement made between Hafny and Payne: for with respect to the entries under which they claim, they are not even alleged to be valid; and in the course of argument their right to succeed was not attempted to be maintained upon the goodness of their entries. They cannot be entitled to relief upon the agreement; for considering it (as is contended for by them) in the nature of a compromise of conflicting claims, unless it had been obtained fairly, without the suggestion of falsehood or the suppression of truth, a court of chancery ought not to compel its specific execution.
That the agreement was procured through the false suggestions of Edward Payne and his brother John, who appears to have acted for him in the management of the claims, from the record it is impossible to doubt. The groof is conclusive, that the Paynes had a connection of *405 the conflicting claims, and when they applied to Hainy for a surrender of his interest, alleged their entries had been correctly surveyed; and relying upon the truth of that statement, after viewing the connection, Hainy gave his obligation to convey the interference. That those entries were erroneously surveyed, is perfectly clear : for the first survey was made to lie altogether north of French’s southwest corner; and whatever doubts may be entertained as to the place of beginning, whether at the southwest corner or at the termination of the 2t)00 poles called for in the entry of Payne and Calk, it is evident upon no principle should it have been made to begin north of the southwest corner of French; and that the Paynes knew the survey should not extend further north, is not only evident from the clear expressions of the entry, but is moreover manifest from Payne having previously surveyed it differently, and by lúa making the certificate of survey upon which the patent issued purport to begin at the southwest corner of French.
But it is contended that whether the entries of Payne and Calk had been correctly surveyed, is matter of law,* about which men may honestly differ; and as such a mistaken representation ought not to prevent a court of equity from decreeing a specific execution. To this it may be answered, that the allegation proven to have been made by the Paynes, that the entries were correctly surveyed, involved both facts and law. It involved the fact of the survey of the 3000 acre entry having been made to begin at the southwest corner of French’s 9000 acre entry, and to lie north thereof, whereas in truth and fact the survey did not begin at that corner, and lies altogether south thereof. Whether, therefore, a false statement in point of law exclusively, wpuld or would pot furnish a good cause to resist the specific execution pf a contract, we have no hesitation in decláring that under the circumstances of the present case the agreement between Hainy and Payne ought not to be enforced. As respects Hainy, therefore, the appellants’ bill was properly dismissed.
But it is contended that they should have had a de-wee against Payne s heirs, upon the purchase from their ancestors. We do not, however, suppose they have shown any cause for relief against the heirs. They appear to have purchased Payne’s claim upon Hainy only, *406 and there are no suggestions of any fraud having been practised by Payne upon them in the sale.
Decree affirmed with costs,